KING & RUIZ
LITIGATION BOUTIQUE

October 19, 2026

***VIA CM/ECF***

Honorable Jesse M. Furman
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

**Re:** ***In re Application of Allan Green et al. for an Order to Take Discovery For Use in a Foreign Proceeding Under 28 U.S.C. § 1782*, 1:26-mc-00166-JMF (S.D.N.Y.)**

Dear Judge Furman:

Pursuant to Rule 3(D) of Your Honor's Individual Rules and Practices, Applicants respectfully request that the Court clarify its October 5, 2026 Order (ECF 76), in light of additional documents produced since its entry regarding agreements between ExxonMobil and NAE f/k/a Esso or ESAF. More specifically, Applicants request that—where documents are responsive to Request Nos. 1 or 2 in that they show negotiation of the Transaction and/or how Esso was valued as part of the Transaction—such documents should neither be redacted nor withheld from production.[1] Counsel met and conferred by teleconference without resolving this issue.[2]

Initial documents produced by the Silverpeak Parties suggested these agreements were central to the Transaction and had a direct influence on the price the Silverpeak Parties offered to ExxonMobil for shares of Esso. For instance, [redacted] *See* **Ex. B** at Silverpeak_26mc166_SDNY000024, 49 (produced Sept. 15, 2026).

Applicants' September 28 letter argued that such agreements and communications concerning them are responsive to Request Nos. 1 and 2, to the extent they are connected to the Transaction and the valuation of Esso. ECF 70 at 3; *see* **Ex. A**. The Silverpeak Parties responded that these are "the operating company's agreements for its ongoing business," that Requests 1 and 2 cannot be a "backdoor" to them, and that "communications about their negotiation should also

[1] Attached as **Exhibit A** is the text of Request Nos. 1 and 2 following the parties' negotiation and the Court's ruling in ECF 76.

[2] To the extent this letter-motion is construed to seek reconsideration of ECF 76, it is filed within fourteen days and thus is timely. *See* L. Civ. R. 6.3.

be excluded." ECF 73 at 3. The Court appears to have "agree[d]" with the Silverpeak Parties, but did not state its reasoning on this issue specifically. ECF 76 at 4.

Additional documents produced since ECF 76 show these are not simply static agreements attached as, or incorporated into, appendices during the offer process but instead were actively negotiated by the Silverpeak Parties as part of the Transaction. Since October 5, the Silverpeak Parties have produced their first set of meaningful internal communications, as well as additional external communications, including with deal partner ExxonMobil. Many otherwise responsive and relevant documents are redacted or withheld entirely "pursuant to ECF 76."[3] What is apparent from the unredacted portions of the documents is that agreements between ExxonMobil and Esso were central to the discussions concerning the price and valuation of Esso and therefore fall squarely within the scope of "materials relating to the negotiation and structuring of the transaction," for which the Court granted the Application. *See* ECF 52 at 3–4.

For example, [redacted] **Ex. C** at Silverpeak_26mc166_SDNY007695–96 (produced Oct. 13, 2026). Another section of material is redacted on the following slide, directly above a bullet point stating [redacted] *Id.* at 7697. As the closing date for the Acquisition was approaching, [redacted] **Ex. D** at Silverpeak_26mc166_SDNY008189 (produced Oct. 13, 2026). Under [redacted] the draft argues that certain information in the draft [redacted] Silverpeak_26mc166_SDNY008189. Later in the same draft under a section titled [redacted] there is a block of bullet points marked "Redacted pursuant to ECF 76." *Id.* at 8191–92.

Other examples appear in the Silverpeak Parties' emails with ExxonMobil, i.e., the back-and-forth between "the arm's length parties" that the Silverpeak Parties told the Court would show "how this price was negotiated." Tr. 18:4–7, ECF 57. For example, [redacted] **Ex. E** at Silverpeak_26mc166_SDNY005585 (produced Oct. 13, 2026). The following week, on the same email chain, there are two messages [redacted] that are "Redacted pursuant to ECF 76." Silverpeak_26mc166_SDNY005581–82.

[3] Applicants do not understand the Silverpeak Parties to contend the redacted or withheld material is irrelevant. As to redactions in particular, one party's determination of relevance is not a basis for redaction from otherwise responsive documents. *See, e.g.*, *Christine Asia Co. v. Alibaba Grp. Holding Ltd.*, 327 F.R.D. 52, 54 (S.D.N.Y. 2018) (collecting cases); *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 298 F.R.D. 184, 186 (S.D.N.Y. 2014) ("[R]edactions of portions of a document are normally impermissible unless the redactions are based on a legal privilege." (citation omitted)).

**Stephen R. Halpin III | King & Ruiz LLP | 45 Rockefeller Plaza, 20th Floor | New York, NY 10111**
**+1 (212) 500-0914 (direct) | shalpin@kingruiz.com**

Later, [redacted] **Ex. F** at Silverpeak_26mc166_SDNY006015. Two large blocks of the [redacted] are "Redacted pursuant to ECF 76." *Id.* at 6015–16.

These are just examples. A search across all productions received as of October 16 for redacted or withheld "pursuant to ECF 76" returns 165 results. In sum, additional documents produced since October 5 contradict the premise on which the purported exclusion in ECF 76 rested. Agreements negotiated as part of the consideration for the Esso stake are not merely the operating company's agreements "for its ongoing business"; they were discussed and negotiated by the Silverpeak Parties and ExxonMobil as part of the price for the Transaction. Again, how the Silverpeak Parties negotiated them is the "negotiation and structuring of the transaction" for which the Court granted the Application, ECF 52 at 3–4, and goes to the theory discussed with the Court. *See* Tr. 18:19–21:3, ECF 57.[4]

None of the Silverpeak Parties' other grounds reaches these documents. Original Request No. 1 sought all documents "relating to the Acquisition," which encompasses agreements negotiated as part of the deal. ECF 2-1 at 5–7; *see also* **Ex. A**, Req. 1(c), Req. 2(a). And the Texas § 1782 application was filed on November 12, 2024, more than six months before the Transaction or Acquisition was announced, and so could not have reached agreements negotiated as part of it. ECF 48 at 1–2. The French decisions the Silverpeak Parties rely on concerned a different shareholder's bylaw-based request for ordinary-course agreements effective in 2022, ECF 70 at 3 n.4, and in granting the Application here the Court already found no French "rule[] akin to privilege[]" barring acquisition or use of the materials sought, ECF 52 at 4, a point the Silverpeak Parties ignore.[5] Trade-secret concerns are addressed by "Confidential" designation under the Protective Order. ECF 63 § 2.2. And whatever NAE holds in France, the Silverpeak Parties' internal communications about negotiating these terms, as well as external communications with ExxonMobil, are not within NAE's files. *See* ECF 52 at 3–4.

Applicants therefore request that the Court clarify its ruling in ECF 76 to provide that documents (including communications) concerning the negotiation of Esso's agreements with ExxonMobil are not excluded from production to the extent they concern those agreements' relationship to the Transaction or its consideration, and direct the Silverpeak Parties, within seven days, to re-produce documents redacted "pursuant to ECF 76" without those redactions and to produce any such documents withheld on that basis. In the alternative, Applicants request that the Court direct the Silverpeak Parties to file Exhibits B–F in unredacted form for *in camera* review so that the Court may more fully consider the relief requested.

Applicants thank the Court for its attention to this matter.

---

[4] *See also* Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir. 1995) (affirming grant of reconsideration and noting reconsideration generally requires "the moving party [to] point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court" (citation omitted)). That standard is met here. These additional documents were not available to Applicants when ECF 76 issued: indeed, as of September 28, the Silverpeak Parties had produced no internal communications at all. ECF 70 at 1–2.

[5] The Court also had before it the decisions from the Southern District of Texas and the Fifth Circuit at the time it granted the Application. *See* ECF 48.

Respectfully submitted,

*/s/ Stephen R. Halpin III*
Stephen R. Halpin III

cc: All counsel of record (by ECF)

The Court agrees with the Silerpeak Parties that, while styled as a request to clarify the Court's endorsement at ECF No. 76, Applicants' letter motion is really a motion for reconsideration of that endorsement - and that Applicants do not demonstrate a basis for reconsideration. See ECF No. 85. Accordingly, their letter-motion is denied.

Upon review of the parties' letters regarding sealing, the Silverpeak Parties' request to maintain Exhibits B through F and Applicants' unredacted letter-motion under seal is granted. The Court is inclined to think that the documents are, contrary to the Silverpeak Parties' assertions, "judicial documents," but even if they are the countervailing interests - including the fact that the information constitutes confidential business information of third parties - justifies maintaining the documents under seal.

The Clerk of Court is directed to terminate ECF No. 79.

SO ORDERED.

October 27, 2026