CLARK SMITH VILLAZOR

Clark Smith Villazor LLP
666 Third Avenue, 21st Floor
New York, New York 10017
www.csvllp.com

BRIAN T. BURNS
D: 212.377.0855
brian.burns@csvllp.com

October 22, 2026

**VIA ECF**
The Honorable Jesse M. Furman
United States District Court for the Southern District of New York
500 Pearl Street
New York, New York 10007

Re: *In re Application of Allan Green et al. for an Order to Take Discovery for Use in a Foreign Proceeding Under 28 U.S.C. § 1782*, 1:26-mc-00166-JMF (S.D.N.Y.)

Dear Judge Furman:

On behalf of the Silverpeak Parties, and pursuant to Federal Rules 26(c) and 45(d)(3), Section 12.1 of the Protective Order (ECF 63), and Section 3.D of Your Honor's Individual Rules and Practices, we respectfully request a narrow protective order covering one item from the discovery materials. Specifically, the Silverpeak Parties ask to withhold the native Excel file of an internal, preliminary refinery operating and financial model (the "Model"). The Silverpeak Parties have produced responsive, non-privileged communications that attach or discuss the Model. But given the Model's highly sensitive and proprietary nature as explained below, the Silverpeak Parties seek to withhold the Excel Model itself (in the various instances in which it appears in the Silverpeak Parties' review population). We have conferred with Applicants' counsel by telephone about this issue, and they do not consent to the relief sought. The Silverpeak Parties are submitting a declaration from the principal author of the Model, Jon Ruggles (the "Ruggles Decl."), to support their position. This tailored relief should be granted.

The Model is a detailed and extensive Excel file (in various iterations) that reflects the decades of experience and expertise that the Silverpeak Parties and their related advisors possess regarding refinery operations and financials. (*See* Ruggles Decl. ¶¶1-10.) Given its ultra-sensitive competitive nature and the absence of any need for Applicants to possess the Model itself, the Court should grant a protective order precluding its production.[1]

Under the Federal Rules, the Court must limit discovery that is "unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(C)(i). On request, it must also protect "a trade secret or other confidential . . . commercial information." Fed. R. Civ. P. 45(d)(3)(B)(i); *see* Fed. R. Civ. P. 26(c)(1)(G). In doing so, the Court weighs "the need for the information against the harm that would result from disclosure." *BLST Northstar, LLC v. Atalaya Cap. Mgmt. LP*, No. 24-MC-66 (GHW) (RWL), 2024 WL 2279195, at *3 (S.D.N.Y. Mar. 12, 2024) (citation omitted). The existence of a confidentiality order restricting a document's use is not "carte blanche for requiring disclosure of confidential information by non-parties." *BLST*, 2024 WL 2279195, at *6. At least one court in this district has approved the withholding of "proprietary financial modeling" documents, despite the availability of an attorneys' eyes-only designation, where "the

[1] The existing Protective Order (ECF 63) expressly preserves the parties' ability to seek an "order further restricting" any discovery material. (ECF 63 § 12.1.)

interest in protecting the confidentiality of documents revealing purportedly proprietary financial modeling . . . outweighs their relevance and the protection offered by the Protective Order." *BLST*, 2024 WL 2279195, at *7 (so holding provided that a person with knowledge attested to the model's sensitivity).

That is the case here. The Model is a trade secret. It was built by Jon Ruggles, currently the Chief Operating Officer at North Atlantic, at an early stage in the acquisition process (and updated over time). (Ruggles Decl. ¶¶1, 7.) Ruggles has decades of experience and unique expertise in refinery financial operations. (*Id.* ¶¶3-6.) The Model is a multi-tab Excel preliminary operating model of the Port-Jérôme-Gravenchon refinery (the refinery that is owned by Esso/NAE). (*Id.* ¶¶2, 8.) It includes modules addressing refinery yields, crude slates, product pricing, refining margins, and operating costs, and was built using methods that are not specific to that refinery. (*Id.* ¶¶9-10.) The Silverpeak Parties take steps to protect it, and it was circulated only to a small group of co-investors and financing sources under strict confidentiality obligations, and even then, only in abbreviated form. (*Id.* ¶17.) Its value lies in the formulas and architecture that encode Mr. Ruggles's decades of refining judgment, not in any single output. (*Id.* ¶¶11-12.) Unlike deal-specific data, a modeling methodology does not go "stale." *Cf. BLST*, 2024 WL 2279195, at *6. A competitor or trader holding the native file could reuse it on any comparable asset, to the Silverpeak Parties' and NAF's detriment. (Ruggles Decl. ¶¶12, 14.) This risk is acute where Applicants are activist investors, because "it is difficult for the human mind to compartmentalize and selectively suppress information once learned." *Louisiana Pac. Corp. v. Money Mkt. 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 491 (N.D. Cal. 2012) (citation omitted). Consistent with *BLST*, we are submitting Mr. Ruggles's declaration on these points, which establish the Model's highly competitively sensitive nature.

The Applicants' apparent desire to possess the Model does not justify production. The French proceeding Applicants want to bring concerns the price offered to NAE's minority shareholders. Applicants are receiving discovery about the Model that bears on that question. That includes responsive, non-privileged communications discussing the Model, its assumptions, and its outputs, and even screenshots, excerpts, or summaries of its results that appear in those communications. Applicants will therefore see instances of when the Model was circulated, to whom, and how the Silverpeak Parties discussed and relied on it. What the Silverpeak Parties seek to withhold is the actual engine: the formulas and architecture that produced those outputs. Those say nothing further about what price was negotiated or why. Producing the native file would be cumulative of what Applicants already have, while exposing truly proprietary material. Indeed, the Silverpeak Parties have produced over 2,000 documents consisting of over 27,000 pages. Applicants have no justifiable reason to possess the native Excel Model, especially given all the material they've already received.

Plus, if Applicants receive the Excel Model itself, they would be permitted, under the Protective Order, to submit it to the French regulatory authority (the AMF) and to the Paris Court of Appeal. These are governmental bodies that will not be bound by the Protective Order, and the Silverpeak Parties cannot control what, if any, disclosures those bodies may permit or allow of the Model. That further supports allowing the Silverpeak Parties to withhold the Model itself.

Because of its highly competitively sensitive nature and given Applicants' lack of any legitimate need for the Model, the Court should permit the Silverpeak Parties to withhold the Model itself.

Respectfully submitted,

*/s/ Brian T. Burns*
Brian T. Burns

cc: All counsel of record (by ECF)

To the extent that the Silverpeak Parties seek to withhold the Model altogether, their application is DENIED. That said, the Court concludes that it should be disclosed on what amounts to an attorney's eyes only basis. Thus, unless and until the Court orders otherwise, the Silverpeak Parties shall produce every version of the native Model in their review population, including each document slip-sheeted as withheld pending resolution of this dispute, by Friday, October 30, 2026, and the materials shall be treated in accordance with the provisions governing Highly Confidential Information in the Silverpeak Parties' proposed Protective Order at ECF No. 60-1, which is adopted for these limited purposes. Further, unless and until the Court orders otherwise, Applicants may not file any version of the Model in the French proceedings. To the extent that either side believes that the foregoing does not suffice for some reason (e.g., the Court should enter a new or amended Protective Order), the parties shall promptly confer and seek appropriate relief. The Clerk of Court is directed to terminate ECF No. 84.

SO ORDERED.

October 28, 2026